## 9282. DUNCAN *v.* SHACKELFORD.

The testimony on the only vital issue in this case was in direct conflict; and, the verdict set aside by the first grant of a new trial not being demanded by the evidence as a whole, the judgment granting a new trial can not be disturbed, under the express provisions of section 6204 of the Civil Code, and the unbroken precedents of the Supreme Court and of this court.

DECIDED APRIL 12, 1918.

Distraint; from city court of Jefferson—Judge Mahaffey. September 9, 1917.

*Ray & Ray, John B. Gamble,* for plaintiff in error.

*Thomas J. Shackelford, F. C. Shackelford,* contra.

WADE, C. J. According to the brief of counsel for the plaintiff in error, "the sole issue for the jury to determine was whether or not plaintiff in error was the tenant of defendant in error." The direct, positive testimony of the agent of the plaintiff, in the lower court, was that in behalf of his principal he rented the premises to the defendant, and not to her husband, for the year in question, for 2,000 pounds of middling lint cotton, to be delivered at a certain place and on a certain date. He further testified: Mrs. Duncan, the defendant, "delivered 450 pounds of cotton there at the gin, and when the balance of the cotton was not forthcoming I went up to her house to see her. I saw her at her house and reminded her of the fact that the cotton had not come up, and that they were picking probably elsewhere; she promised me that she would get the cotton out and send it to the gin. She never made any complaint then nor throughout the entire year that she was not renting the place. . . As far as Mr. Duncan renting this place, I did not rent to him. He was about to go into bankruptcy, and I would not have been safe, but as an accommodation or as a matter of sympathy, I did agree to rent to his wife, and told him so on two or three occasions." There was testimony from one McDougal that Mrs. Duncan cultivated the land during the year for which it was sought to recover rent, and "she said she traded with Thomas J. Shackelford [the agent of the plaintiff, who testified he had rented the land to her]. I took a note down there for her to sign, but she did not sign it. She said she traded with Mr. Thos. J. Shackelford, and that was the excuse she gave. I took the note down there for H. N. Shackelford." The defendant denied this, and testified: that her husband rented the place, and

that she knew nothing of the matter until he came home; that she knew the witness McDougal, but that he did not bring any note to her to sign, but brought one for her husband; that she did not rent the land and did not owe the plaintiff anything for rent, and delivered no cotton to pay off rent, but the bale of cotton paid on the rent was delivered by one of her boys, and her husband helped this boy to load the cotton and sent it to the plaintiff or his agent. She denied also having admitted to T. J. Shackelford, the agent of the plaintiff, that she had rented land from his brother through him. Her husband testified that he himself rented the land in question from the plaintiff, contracting through T. J. Shackelford, in his office at Athens, Georgia, when no one else was present, and agreed to pay as rent four bales of cotton weighing five hundred pounds. He further testified that his wife was at home, sick, at the time this contract was made, and that his son delivered one bale of cotton in part payment of the rent, and that he, his wife, and his children all helped to make the crop.

From the foregoing statement of the evidence it is apparent that there was a decided conflict between the testimony of T. J. Shackelford on the one hand, and the testimony of the defendant and her husband on the other. Even if it be admitted, as contended by counsel for the plaintiff in error, that the evidence of Shackelford that he rented this property to Mrs. Duncan was a mere conclusion on his part that the contract was with her, and therefore this testimony could have no substantial value when opposed to the direct evidence to the specific effect that the contract was made with Duncan, and not with his wife, according to the testimony of Duncan, and conceding further that Mrs. Duncan was not present in person when the contract was made, it might have been inferred by the jury (if they accepted the testimony for the plaintiff as true) that Shackelford dealt with Duncan as agent for his wife, and through him made the contract of rental with Mrs. Duncan, which was afterwards expressly ratified by her in the conversation to which Shackelford testified, and was further ratified by the payment by her of a part of the rent contract. It is not intended here to intimate what was in fact proved, or what inferences the jury *should* have drawn, but merely to indicate what inferences *might* legitimately have been drawn from the testimony. Aside from this, however, it does not, from anything

in the testimony of T. J. Shackelford, appear that it was a conclusion.   He did not even admit that Mrs. Duncan was not present when the original contract was made, and he testified positively that he did not rent to Duncan, "but did agree to rent to his wife," and told Duncan so on two or three occasions, and, *so far as appears,* the witness was testifying as to facts, and not conclusions. It is true Mrs. Duncan and her husband ,both denied the making of any contract with Mr. Shackelford, or its ratification by payment of rent under the alleged contract by her, and she likewise denied that she ever expressly ratified any rent contract or in any way agreed thereto, and denied the testimony of McDougal to the effect that she admitted to him that she had traded with T. J. Shackelford, the agent of the plaintiff, and had assigned this fact alone as a reason for not signing the note which he presented for execution, by its terms made payable to H. N. Shackelford.   All this, however, but serves to illustrate the fact that the evidence was conflicting on the vital point in the case, and completely demonstrates the impossibility for this court to reverse the judgment of the trial court in granting a first new trial, unless the unbroken line of precedents of the Supreme Court and of this court be violated, since it can not reasonably be contended that the evidence, taken as a whole, demanded the verdict.

*Judgment affirmed. Jenkins and Luke, JJ., concur.*